IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

UNITED STATES OF AMERICA,

      Plaintiff,

v.                                        CASE NO. 1:11-cv-00060-MP-GRJ

WILLIAM J DICKERT,

      Defendant.

_____/

## REPORT AND RECOMMENDATION

      Pending before the Court are: (1) The United States' Motion For Summary Judgment Against William J. Dickert (Doc. 35) to which Defendant has filed an opposition memorandum (Doc. 46), and (2) Defendant's Motion For Summary Judgment (Doc. 65) to which the United States has filed a memorandum in opposition (Doc. 66) and a response to Defendant's statement of undisputed facts. (Doc. 67.)[1] The motions are therefore ripe for review.  For the reasons discussed below, the United States' Motion for Summary Judgment is due to be granted and the Defendant's Motion for Summary Judgment is due to be denied.

## INTRODUCTION AND BACKGROUND

      This is an action to reduce the 1999 tax assessment against the Defendant,

---

[1] The United States also has filed a Motion To Strike (Doc. 52) requesting the Court to strike exhibit 1 to the Defendant's declaration, which Defendant filed in opposition to the United States' Motion for Summary Judgment. Because the motion concerns an evidentiary issue relevant to resolution of the United States' motion for summary judgment the Court will address this motion in the report and recommendation.

William J. Dickert ("Dickert") to judgment and to foreclose the federal tax lien on

Dickert's real property. Although the case is fairly straightforward, Dickert, proceeding

*pro se*, has done his best to delay the resolution of this case.

The material undisputed facts of record disclose the following details.  For the

tax year 1999 Dickert did not file a federal income tax return, Form 1040, even though

he earned $364,726.00 in investment income in 1999.[2]  Because Dickert failed to file a

tax return the IRS—as it is entitled to do under the substitute for return

procedures—computed Dickert's tax liability for 1999 based upon information reported

to the IRS by third parties—such as Edward D. Jones & Co., the Janus Fund and

Hartford Life & Annuity Insurance Co.—on Forms 1099-B, 1099-DIV, 1099-INT and

1099-R.[3]  The examination report (Form 4700), explaining the taxes and penalties the

IRS proposed to assess against Dickert, was sent to Dickert on November 21, 2003.[4]

Dickert was advised that he had 30 days to agree with or challenge the proposed taxes

and penalties proposed in the examination report. Despite the fact that the IRS

provided Dickert with an opportunity to dispute the proposed taxes and penalties,

Dickert failed to do so.[5]  Because Dickert failed to dispute the proposed taxes and

assessments, the IRS issued a notice of deficiency on February 27, 2004 to Dickert for

---

[2] Doc. 35, Declaration of J.C. Slate; Slate Decl. Ex. 1 and 3.

[3] *Id.* Ex. 1.

[4] *Id.,* ¶2.

[5] *Id.*

the tax year 1999.[6]  The Notice of Deficiency sent to Dickert on February 27, 2004

advised Dickert how the IRS calculated his income tax deficiency and advised Dickert

he could petition the United States Tax Court to contest the deficiency. Dickert did not

take any action to challenge the notice of deficiency in Tax Court. [7]

Because Dickert did not challenge the notice of deficiency in Tax Court, a

representative of the Secretary of the Treasury assessed against Dickert income tax,

penalties and interest for the 1999 tax year for the following amounts. On July 19, 2004

Dickert was assessed a tax in the sum of $137,983.00, interest in the sum of

$54,124.89, a penalty of $6,667.31 for failing to prepay the tax and a penalty of

$34,447.00 as a late filing penalty. After that on November 5, 2007 the delegate of the

Secretary of the Treasury assessed an additional $34,436.96 for failing to pay the

taxes, penalties and interest.[8]  The July 19, 2004 and November 5, 2007 assessments

are contained in the Form 4340s sent to Dickert, which are business records of the IRS.

As a consequence of the July 19, 2004 tax assessment, a federal tax lien arose

and attached to Dickert's property at 787 S.E. 964 Street, Old Town, Florida. In order to

record the federal tax lien on Dickert's property in Dixie County, Florida the IRS on

September 16, 2005 prepared and filed in the public records of Dixie County, Florida a

---

[6] *Id.* ¶3; Ex. 2.

[7] *Id.* ¶3.

[8] *Id.* ¶¶ 4 & 5; Ex. 3.

Notice of Federal Tax Lien ("NFTL").[9]   On September 22, 2005 the IRS sent to Dickert

by certified mail a "Notice of Federal Tax Lien Filing and Your Right to a Hearing Under

IRC 6320."[10]   Dickert received the notice and in response requested a collection due

process hearing to appeal the filing of the NFTL.[11]   The only challenges raised by

Dickert were frivolous arguments such as asserting that he was not a taxpayer and that

the IRS did not have the authority to file tax liens. Dickert did not raise any relevant or

specific issues with regard to the tax lien. Consequently, without a face-to-face

hearing—and after affording Dickert the opportunity to participate in telephone

hearings, which Dickert did not attend—the IRS advised Dickert that it had sustained

the filing of the NFTL and advised Dickert of his right to seek review in Tax Court.[12]

Despite having received notice of the tax assessments and despite the IRS

having made demand upon Dickert for payment Dickert has refused to pay the

assessed tax liability, penalties and assessments for the 1999 tax year. According to

the IRS, as of November 1, 2011, the total amount of Dickert's assessed unpaid federal

income tax liability for the 1999 tax year, taking into account appropriate credits,[13]

payments and abatements is the sum of $390,159.48.[14]

---

[9] *Id.,* Ex. 4.

[10] *Id.,* Ex. 5.

[11] *Id.,* Ex. 6.

[12] *Id.*, ¶10, Ex. 7.

[13] The IRS has credited Dickert's account based upon a levy on Dickert's social security in the amount of $95.85 per month from July 2009 through November 2010.

[14] *Id.* ¶13, Ex. 8.

The United States and Dickert have filed cross-motions for summary judgment. The Court held a telephonic hearing on August 16, 2012 to address the pending motions.[15]  At the hearing, the Court addressed two issues related to the pending motions for summary judgment: (1) whether the notice of deficiency was mailed via certified mail to Dickert's last known address; and (2) whether Dickert had submitted evidence of the cost basis of the securities whose sale gave rise to the tax liability.  The Court allowed both parties to file supplements to their respective motions for summary judgment to address these issues.  The United States filed a supplement, but Dickert did not.  These issues and the supplemental memoranda are discussed below.

## II.  SUMMARY JUDGMENT STANDARD

Pursuant to Federal Rule of Civil Procedure 56(c), the entry of summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In applying this standard, the Court must examine the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits and other evidence in the record "in the light most favorable to the non-moving party."  Samples on Behalf of Samples v. Atlanta, 846 F.2d 1328, 1330 (11th Cir. 1988).  As the Supreme Court held in Celotex Corp. v. Catrett, 477 U.S. 317 (1986), the moving party bears the initial burden of establishing the nonexistence of a triable issue of fact. If the

---

[15]   The order setting the telephonic hearing was entered on August 10, 2012 and mailed to the pro se Defendant on that date.  (Doc. 68.)  There is no indication that the notice of hearing was returned. Counsel for the United States represented that he telephoned and emailed Defendant prior to the hearing, but Defendant failed to respond.  In light of these efforts to contact Defendant on the part of both the Court and the United States, and Defendant's failure to respond, the Court went forward with the hearing on August 16.

movant is successful on this score, the burden of production shifts to the non-moving party who must then come forward with "sufficient evidence of every element that he or she must prove." Rollins v. Techsouth, 833 F.2d 1525, 1528 (11th Cir. 1987). The non-moving party may not simply rest on the pleadings, but must use affidavits, depositions, answers to interrogatories, or other admissible evidence to demonstrate that a material fact issue remains to be tried.

## III. DISCUSSION

The United Sates first requests that the Court reduce to a judgment the tax assessment against Dickert for the tax year 1999. "A tax assessment is an administrative determination by the IRS of a tax liability, and it is the first necessary step towards attempting to collect on that liability." United States v. Charboneau, No. 5:04-cv-442-oc-10GRJ, 2006 WL 2346280, *3 (M.D. Fla. July 18, 2006) (Charboneau II) (citing 26 U.S.C. § 6213(a)). In support of its motion for summary judgment, the United States has submitted a copy of a "Certificate of Assessments, Payments, and Other Specified Matters" for the tax year 1999. (Doc. 35-4.) This document, also known as a "Form 4340," is considered presumptive proof that a valid tax assessment was made. See United States v. Chila, 871 F. 2d 1015, 1019 (11th Cir. 1989). The Form 4340 identifies Dickert by name and social security number, notes that the assessment pertains to a Form 1040, specifies the relevant tax period as 1999, and lists the date, amount of assessment, payments and credits, interest, and fees. (Doc. 35-4.) The Form 4340 also notes when notices of assessments were generated and mailed. Id. See also United States v. Charboneau, No. 5:04-cv-442-oc-10GRJ, 2006 WL 2346947,

*4 (M.D. Fla. Sept. 26, 2005) (<u>Charboneau I</u>) ("[I]n order to have a valid assessment, the documentation provided by the IRS need only state the taxpayer's identity, the character of the liability assessed, the taxable period, and the date and amount of the assessment.") (citing 26 C.F.R. § 301.6203-1).

In his motion for summary judgment and in his opposition to the United States' motion for summary judgment, Dickert asserted that the United States failed to demonstrate that the notice of deficiency was sent via certified mail to his last known address.

> 26 U.S.C. § 6212(a) provides that "[i]f the Secretary determines that there is a deficiency in respect of any tax imposed. . . he is authorized to send notice of such deficiency to the taxpayer by certified mail or registered mail."  A Notice of Deficiency must be mailed *before* an assessment and/or any subsequent levy or lien on property may be made. 26 U.S.C. § 6212(a).  Simply put, the Notice serves as a prerequisite to a valid assessment by the IRS.  <u>Robinson v. United States</u>, 920 F. 2d 1157, 1158 (3d Cir. 1990).

<u>Charboneau I</u>, 2006 WL 2346947, at *4.  <u>See also</u> <u>Keado v. United States</u>, 853 F. 2d 1209, 1210 (5th Cir. 1988).  While the United States is not required to prove that Dickert received the notice, it is required to prove that the notice was sent, pursuant to the provisions of 26 U.S.C. § 6212(a).  <u>Charboneau I</u>, 2006 WL 2346947, at *5; <u>Keado</u>, 853 F. 2d at 1211-12.

In support of its motion for summary judgment, the United States had filed the declaration of J.C. Slate, a Revenue Officer at the IRS.  (Doc. 35-1.)  Officer Slate stated in his declaration that the IRS sent Dickert a notice of deficiency, but does not state if that notice was sent via certified or registered mail to Dickert's last known address.  *Id.* at 2.  Dickert claimed that he never received the notice, but as noted

above, proof of receipt is not required.  The United States asserted that the notice of deficiency is stamped with a "certified mail number," which shows that it was sent via certified mail.  (Doc. 66, at 6.)  It also argued that the Form 4340 proves that the notice of deficiency was properly mailed.  *Id.* at 5.  The Form 4340, however, indicates that a notice of deficiency was produced, but not its manner of mailing.  As noted above, the Court held a telephonic hearing on August 16, 2012 addressing this issue.  At the hearing, the Court granted leave to the United States to file a supplemental memorandum, with supporting documentation, showing that the IRS had in fact mailed the notice of deficiency to Dickert at his last known address.

In response to the Court's leave to file supplemental materials on the issue of mailing, the United States submitted a memorandum on August 28, 2012.  (Doc. 71.)  With that memorandum, it submitted as exhibits to the affidavit of Revenue Officer J. C. Slate a certified mail log, signed and dated with the same date listed on the notice of deficiency.  (Doc. 71-1, at 3.)  The notice of deficiency was stamped with a certified mail tracking number; this number matches the number listed on the certified mail log.  Id.; Doc. 35-3.  The United States also submitted with its supplemental memorandum a "Track & Confirm" printout from the United States Postal Service, listing the delivery confirmation information for the same certified mail number listed on the notice of deficiency. (Doc. 71-1, at 4.)  The Track & Confirm printout states that the notice of deficiency was delivered on March 2, 2004 in Old Town, Florida.  Id.  Finally, the United States submitted evidence that the Old Town address was Dickert's last known address:  a copy of the Correspondence Examination History Sheet (Form 12616) that

stated that the IRS sent the notice to Dickert's master file address.  Id. at 5.  That

address—HC 3 Box 55, Old Town, Florida 32680—matches the address listed on the

notice of deficiency.  Id.; Doc. 35-3.  Taken together, these submissions are sufficient

proof that the notice of deficiency was properly mailed via certified mail to Dickert's last

known address.  See Keado, 853 F. 2d at 1213-14 (finding sufficient evidence that

notice of deficiency was mailed where IRS submitted affidavit regarding mailing

procedures, copy of certified mail receipt, and relevant page from mailing log);

Charboneau II, 2006 WL 2346280, *5 (citing United States v. Dixon, 672 F. Supp. 503,

506 (M.D. Ala. 1987)).

Dickert's other challenges to the validity of the tax assessment may be disposed

of briefly.  He raises two evidentiary challenges to the United States' motion for

summary judgment: that Revenue Officer Slate's affidavit is inadmissible because he

had no personal knowledge of the matters he described, and that the Form 4340 is

inadmissible because it was prepared for litigation.  These arguments are without merit.

The materials which Revenue Officer Slate discusses, and which are attached to

Slate's affidavit, are business records within the meaning of the Federal Rules of

Evidence, and are admissible.  Form 4340 is also admissible as a self-authenticating

public record.  See Brewer v. United States, 764 F. Supp. 309, 318 (S.D. N.Y. 1991)

("Consistently, courts have held that Form 4340 is self-authenticating.") (citing United

States v. Neff, 615 F. 2d 1235, 1241 (9th Cir. 1980); Schmidt v. IRS, 717 F. Supp. 763,

764 (D. Kan. 1989)).  And as discussed above, it is well-established law that a Form

4340 is not only admissible, but is presumptive proof that an assessment was validly

made.  See Chila, 871 F. 2d at 1019.

In his own motion for summary judgment, Dickert argues that there is no valid tax assessment against him because the United States did not show that the IRS prepared a tax return on his behalf, which return was signed by the Secretary.  (Doc. 65, at 7-8.) This argument is incorrect, because the IRS is not required under 26 U.S.C. § 6020(b) to prepare or file a substitute tax return for Dickert in order for a valid assessment to be made.  See Brenner v. Comm'r, 164 F. App'x 848, 850 (11th Cir. 2006).  The United States followed the correct procedure for making a valid assessment by sending Dickert a notice of deficiency and giving him an opportunity to challenge that deficiency in the United States Tax Court.  Dickert did not avail himself of the opportunity to challenge the deficiency, and the deficiency was therefore properly assessed.

Dickert also asserts that there is no valid assessment because the United States was required to produce a "summary record of assessment" signed by the Secretary. (Doc. 65, at 12.)  Again, the lack of a summary record of assessment is of no consequence here, because none was required where the United States produced the Form 4340, which constitutes presumptive proof of a valid assessment.  See Chila, 871 F. 2d at 1017-18.

Because the United States has established that the assessment is valid through its submission of the Form 4340 and documentary evidence of mailing, the burden shifts to Dickert to prove that the assessment is arbitrary or incorrect.  See United States v. White, 466 F. 3d 1241, 1248 (11th Cir. 2006) (citing Stallard v. United States, 12 F. 3d 489, 493 (5th Cir. 1994)).  Dickert asserts that the assessment was incorrect,

because the IRS computed the taxes Defendant owed based on the total sale price of the securities he sold in 1999, rather than on the total sale price minus the amount Defendant paid for those securities.  Although Defendant was given an opportunity to present the cost basis of the securities sold to the IRS as part of the appeals process, he failed to do so.

The only evidence on this issue now on the record is a declaration submitted by Defendant in response to the United States' motion for summary judgment, in which he states that he "called Edward Jones to inquire as to the cost basis for the stocks sold in 1999." (Doc. 47.)  This declaration references Exhibit 1, which purported to show the original sale prices of the stocks.[16]  The United States has moved to strike the declaration and exhibit on the grounds that it has not been properly authenticated and is inadmissible hearsay.  (Doc. 52.)  In his response to the motion to strike, Dickert states that he received records of sale of stocks from Edward Jones in response to his requests, and attaches those records, in addition to what appears to be a cover letter from Edward Jones stating that the "information you requested" is "[e]nclosed."  (Doc. 54.)  These records are insufficient to defeat a motion to strike because the problems identified by the United States—the fact that the documents are not self-authenticating and have not been authenticated by an affidavit from an employee of Edward Jones, and the fact that the records are pure hearsay—have not been resolved.  These documents, which purport to establish a cost basis for the securities sold in 1999, are out-of-court statements offered for the truth of the matter: in other words, hearsay.

_____

[16] Exhibit 1 does not appear to have been filed on the Court's docket.

They are inadmissible to support Dickert's motion for summary judgment, and therefore the United States' motion to strike is due to be granted.  Because the documents are inadmissible, Dickert has failed to prove that the assessment, which was based on the total sale price of the securities, is arbitrary or inaccurate.

The United States has submitted all required documentation to establish that its assessment against Dickert for the tax year 1999 is valid and enforceable. Dickert has failed to carry his burden to prove that the assessment was arbitrary or incorrect. Therefore, the 1999 tax assessment should be reduced to a judgment, the United States' motion for summary judgment should be granted, and Dickert's motion for summary judgment should be denied.

The United States also requests the entry of  summary judgment to foreclose its tax lien on Dickert's property in Old Town, Florida.  26 U.S.C. § 6321 states:

> If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person.

26 U.S.C. § 6322 further states that the lien "shall arise at the time the assessment is made and shall continue until the liability for the amount so assessed (or a judgment against the taxpayer arising out of such liability) is satisfied or becomes unenforceable by reason of lapse of time."  See also In re Haas, 31 F. 3d 1081, 1083 (11th Cir. 1994). Here, Dickert held legal and equitable title to the Old Town property on the date of assessment, July 19, 2004.  (Doc. 36, at 4.)  Therefore, a tax lien attached to that

property on the same date.

The United States notes that on August 19, 2004—after the tax lien attached to Dickert's property, but before the filing of the Notice of Federal Tax Lien—Dickert transferred his interest in his property to Vicki Michelle Dickert.  (Doc. 35, at 7.)  The United States and Vicki Dickert have jointly filed a stipulation stating that "Vicki Michelle Dickert did not pay full or adequate consideration" for the property, and she does not qualify as a "purchaser" under 26 U.S.C. § 6323(h)(6).  (Doc. 12, at 2.)  Further, the United States and Vicki Dickert stipulated that the United States' interest in the property is superior to Vicki Dickert's, and agreed that the United States may seek judgment of foreclosure and an order of sale in this case.  Id.  Cf. United States v. Domenico, No. 8:09-cv-1282-T-26AEP, 2010 WL 3029019, *2 (M.D. Fla. Apr. 29, 2010) ("Once a federal tax lien attaches to property belonging to a taxpayer, it follows that property into the hands of any transferee.").

26 U.S.C. § 7403(a) governs foreclosure of a federal tax lien, and states that:

> In any case where there has been a refusal or neglect to pay any tax, or to discharge any liability in respect thereof, whether or not levy has been made, the Attorney General or his delegate, at the request of the Secretary, may direct a civil action to be filed in a district court of the United States to enforce the lien of the United States under this title with respect to such tax or liability or to subject any property, of whatever nature, of the delinquent, or in which he has any right, title, or interest, to the payment of such tax or liability.

Here, the United States has made a valid assessment, and Dickert has refused to pay the tax.  Therefore, the United States' tax lien on Dickert's property at 787 S.E. 964 Street, Old Town, Florida should be foreclosed, the United States' motion for summary judgment should be granted, and Dickert's motion for summary judgment should be

denied.

## IV. RECOMMENDATION

In light of the foregoing, it is respectfully **RECOMMENDED** that:

1.  The United States' Motion For Summary Judgment Against William J. Dickert (Doc. 35) should be **GRANTED**.

2.  Defendant's Motion For Summary Judgment (Doc. 65) should be **DENIED.**

3.  The United States' Motion to Strike Exhibit 1 to the Declaration of William Dickert (Doc. 52) should be **GRANTED**.

**IN CHAMBERS** at Gainesville, Florida  this 24ᵗʰ day of September 2012.

*s/Gary R. Jones*

GARY R. JONES
United States Magistrate Judge

### NOTICE TO THE PARTIES

**Pursuant to Fed. R. Civ. P. 72(b)(2), a party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 14 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**